BRETT M. SCHUMAN (State Bar No. 189247)
DION M. BREGMAN (State Bar No. 208393)
AHREN C. HOFFMAN (State Bar No. 250469)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: bschuman@morganlewis.com
E-mail: dbregman@morganlewis.com
E-mail: ahoffman@morganlewis.com

Attorneys for Plaintiff
OPENWAVE SYSTEMS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OPENWAVE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> MYRIAD FRANCE S.A.S, <br><br> Defendants. | Case No. 10-CV-02805 (LB) <br><br> **PLAINTIFF'S ANSWER TO DEFENDANT'S COUNTERCLAIM** |

Plaintiff OPENWAVE SYSTEMS INC. ("OPENWAVE") hereby responds to and answers the counterclaim of Defendant MYRIAD FRANCE S.A.S. ("MYRIAD"), which appears beginning at page 6 of MYRIAD's Answer and Counterclaim, as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Upon information and belief, OPENWAVE admits that MYRIAD is a French corporation having its principal place of business in France.

2. OPENWAVE admits that OPENWAVE is a Delaware corporation with its principal place of business in Redwood City, California.

3. OPENWAVE admits that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that the parties are citizens of a State and a foreign state

and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. OPENWAVE further admits that the controversy involves escrowed funds at least in the amount of $4,200,000. OPENWAVE denies each and every other allegation in paragraph 3.

4. OPENWAVE admits that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

## GENERAL ALLEGATIONS

5. OPENWAVE lacks knowledge or information sufficient to form a belief about the allegations in paragraph 5 and, for that reason, denies the allegations.

6. OPENWAVE admits that OPENWAVE and Purple Labs, S.A. ("PURPLE LABS") entered into an Asset Purchase Agreement dated as of June 27, 2008 (the "APA"). OPENWAVE denies each and every other allegation in paragraph 6.

7. OPENWAVE admits that the APA provides for the purchase by PURPLE LABS of certain assets of OPENWAVE related to the "Business," as defined in the APA. OPENWAVE admits that Exhibit A to the APA is entitled Certain Definitions and provides, in part:

> "**Business**" shall mean the mobile client software business of [Openwave], and its direct and indirect subsidiaries, that develops, distributes, markets, sells, licenses, and supports various hand set software clients such as browsers, SMS, EMS and MMS and email messaging clients, java clients, UI, widgets, graphics engines and other software designed for mobile hand sets.

OPENWAVE denies each and every other allegation in paragraph 7.

8. OPENWAVE admits that Section 2.7 of the APA provides, in part:

> **2.7 Intellectual Property.**
> * * *
> (h) The Seller's operation of the Business has not infringed (directly, contributorily, by inducement, or otherwise) or otherwise violated, misappropriated, or made unlawful use of any Intellectual Property Rights of any other Person. Without limiting the foregoing, neither the use of seller IP nor the use of Licensed IP as permitted under the License Agreement, nor the license, the use or sale of Seller Product in operation of the Business infringes, violates or makes unlawful use of any Intellectual Property Right of any other Person. None of the Seller IP, Licensed IP or the Seller Product contain any Intellectual Property misappropriated from any other Person.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21875474.2

2

PLAINTIFF'S ANSWER TO COUNTERCLAIM
CASE NO. 10-CV-02805 (LB)

    (i) No claim or Proceeding involving any Seller IP, Seller Products, or the business is (i) pending before any Government Body, arbitrator, or arbitration panel; or (ii) to Seller's Knowledge, was threatened against Seller.

OPENWAVE denies each and every other allegation in paragraph 8.

  9.  OPENWAVE admits that Section 4.2 of the APA provides:

**4.2 Indemnification By The Seller.** The Seller shall hold harmless and indemnify each of the Purchaser Indemnitees from and against, and shall compensate and reimburse each of the Purchaser Indemnitees for, any Damages that are directly or indirectly suffered or incurred by any of the Purchaser Indemnitees or to which any of the Purchaser Indemnitees may otherwise become subject at any time (regardless of whether or not such Damages relate to any third party claim) and that arise directly or indirectly from or as a direct or indirect result of:

(a) any Breach of any representation, or warranty made by the Seller in this Agreement;

(b) any Breach of any covenant made by the Seller in this Agreement;

(c) any Liability arising out of the operation of the Business or ownership of the Assets prior to the Closing, which is not an Assumed Liability and which arises, out of a breach of any representation, warranty or covenant made by Seller in this Agreement;

(d) any failure to timely fulfill or discharge any of the Excluded Liabilities; or

(e) any Proceeding relating directly or indirectly to any Breach, alleged Breach, Liability or matter of the type referred to in clauses (a), (b), (c) or (d) of this Section 4.2 (including any Proceeding commenced by any Purchaser Indemnitee for the purpose of enforcing any of its rights under this Section 4.2).

OPENWAVE denies each and every other allegation in paragraph 9.

  10.  OPENWAVE admits that Section 4.4(a) of the APA provides:

Notwithstanding anything to the contrary set forth in this Agreement, but subject to Section 4.4(e), the aggregate Liability of the Seller with respect to representations and warranties, other than the Specified Seller Representations (for which the aggregate Liability of the Seller shall not be limited), shall not exceed $4,200,000, and the aggregate Liability of the Purchaser with respect to representations and warranties, other than the Specified Purchaser Representations (for which the aggregate Liability of the Purchaser shall not be limited), shall not exceed $4,200,000.

OPENWAVE denies each and every other allegation in paragraph 10.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21875474.2

3

PLAINTIFF'S ANSWER TO COUNTERCLAIM
CASE NO. 10-CV-02805 (LB)

11. Upon information and belief, OPENWAVE admits that MYRIAD deposited $4,200,000 of the agreed-upon purchase price for the Business into an escrow account. OPENWAVE admits that the parties entered into an Escrow Agreement. OPENWAVE denies each and every other allegation in paragraph 11.

12. OPENWAVE admits that Section 1.4 of the Escrow Agreement provides:

> Until released from the Escrow Account in accordance with the terms of this Agreement, any income or other distributions received in respect of the investment of the Escrowed Funds shall be collected, deposited into the Escrow Account and reinvested by the Escrow Agent as part of the Escrowed Funds; provided, however, that any interest accruing on or income otherwise earned on any investment of any Escrowed Funds shall inure to the benefit of the Seller. The Escrow Agent shall be responsible for reporting any income earned to the Internal Revenue Service.

OPENWAVE admits that, under the terms of the Escrow Agreement, interest or income earned on escrowed funds inures to the benefit of OPENWAVE. OPENWAVE denies each and every other allegation in paragraph 12.

13. OPENWAVE admits that Section 4.6 of the APA provides, in part:

> **4.6 Defense Of Third Party Claims.** In the event of the assertion or commencement by any Person other than a party hereto of any claim or Proceeding (whether against Purchaser or against any other Person) with respect to which any Indemnitee may be entitled to indemnification, compensation or reimbursement pursuant to this Section 4, the Purchaser shall have the right, at its election, to have the Seller assume the defense of such claim or Proceeding (in which case the Seller must proceed with the defense of such Claim or Proceeding) or to assume the defense of such claim or Proceeding, with Purchaser's legal costs and expenses of the Purchaser's defense being at the sole expense of the Purchaser (it being understood that payments made to such third party in connection with such claim or Proceeding are not legal defense costs and it being further understood that if the Purchaser elects that the Seller shall assume the defense, in the event that the Seller breaches its obligation to do so, the Purchaser's legal costs and expenses of such defense would not be at Purchaser's sole expense but rather would be taken into account in calculating the Purchaser's indemnifiable Damages).

OPENWAVE denies each and every other allegation in paragraph 13.

14. OPENWAVE admits that Section 4.7 of the APA provides:

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21875474.2

4

PLAINTIFF'S ANSWER TO COUNTERCLAIM
CASE NO. 10-CV-02805 (LB)

**4.7 Claims for Indemnification; Exercise Of Remedies By Indemnitees Other Than The Purchaser or Seller.**

(a) Except as set forth in Section 4.7(b) below, claims for indemnity by an Indemnitee pursuant to this Section 4 shall be made by delivery of a Claim Notice (as defined below) to the indemnifying parties; provided, however, that no delay on the part of any Indemnitee in notifying the indemnifying parties shall relieve such indemnifying parties from any obligation hereunder unless (and then solely to the extent) such indemnifying parties are thereby prejudiced. For purposes of this Section 6.6, "Claim Notice" shall mean a notice (i) stating that such Indemnitee has become aware of a matter that may give rise to an indemnifiable claim or has suffered, accrued or incurred any Damages or anticipates that it may suffer, accrue or incur any Damages and (ii) specifying the facts pertinent to such indemnification claim and the individual items of losses, costs and other Damages so stated and, in the case of potential Damages, the basis for such potential Damages.

(i) Any indemnifying party may make a written objection (an "Objection Notice") to any claim for indemnification stating the basis for such objection in reasonable detail to permit the Indemnitees to evaluate such objection. Such Objection Notice shall be delivered to the Indemnitees within 10 Business Days after delivery of the Claim Notice to such indemnifying parties.

(ii) If no indemnifying party timely delivers an Objection Notice in accordance with Section 4.7(a)(i) above, such failure to object shall be deemed an irrevocable acknowledgment by such indemnifying parties that the Indemnitees are entitled to the full amount of the claim for Damages arising from the indemnification claim as set forth in such Claim Notice.

(iii) The indemnifying parties and the Indemnitees shall attempt in good faith to resolve any claim for indemnification to which an Objection Notice is made. If the indemnifying parties and the Indemnitees are unable to resolve a claim for indemnification to which an Objection Notice has been timely delivered in accordance with Section 4.7(a)(i) above within 30 days after delivery thereof, any indemnifying party that filed an Objection Notice may pursue any other right or remedy provided in this Agreement or as therwise allowed by law or equity.

(iv) Entry of an order by a court of competent jurisdiction as to the validity and amount of any claim in such Claim Notice shall be final, binding and conclusive upon the parties to this Agreement.

(b) If any third party notifies any Indemnitee with respect to any matter that may give rise to a claim for indemnification against any indemnifying party under this Section 4, then the Indemnitee shall promptly notify the indemnifying party thereof in writing; provided, however, that no delay on the part of such Indemnitee in notifying the indemnifying party shall relieve such indemnifying party from any obligation hereunder unless (and then solely to the extent) the indemnifying party is thereby prejudiced.

(c) Notwithstanding anything in this Agreement to the contrary, no Indemnitee (other than the Purchaser or Seller or any successor

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21875474.2

5

PLAINTIFF'S ANSWER TO COUNTERCLAIM
CASE NO. 10-CV-02805 (LB)

1
2
3
4
5

> thereto or assign thereof) shall be permitted to assert any indemnification claim or exercise any other remedy under this Agreement.
>
> (d) Any Damages for which the Seller is liable pursuant to Section 4.2(a) (other than with respect to the Specified Seller Representations) shall first be satisfied from the escrow account established pursuant to the Indemnification Escrow Agreement.

6 OPENWAVE denies each and every other allegation in paragraph 14.

7     15.    OPENWAVE admits that MYRIAD faxed to OPENWAVE a letter dated
8 September 23, 2009, entitled "Claims Notice" (the "September 23 Letter"). OPENWAVE denies
9 each and every other allegation in paragraph 15.

10     16.    OPENWAVE admits that the September 23 Letter purports to set forth five
11 separate matters that MYRIAD alleges have or may give rise to indemnifiable claims under the
12 APA. OPENWAVE admits that four of the five matters addressed in the September 23 Letter
13 purportedly involve claims of patent infringement that MYRIAD asserts had been or could be
14 threatened against it relating to the Business it acquired from OPENWAVE pursuant to the APA.
15 OPENWAVE denies each and every other allegation in paragraph 16.

16     17.    OPENWAVE admits that, in the September 23 Letter, MYRIAD stated that it "is
17 prepared to disclose further facts and analysis relating to certain pending Claims under the terms
18 of an appropriate confidentiality agreement, intended, among other things, to protect our analysis
19 of the Claims from discovery by third parties." OPENWAVE denies each and every other
20 allegation in paragraph 17.

21     18.    OPENWAVE admits that it responded to the September 23 Letter in a letter dated
22 October 7, 2009 (the "October 7 Letter"). In the October 7 Letter, OPENWAVE disputed and
23 rejected each and every one of MYRIAD's asserted claims for indemnification. OPENWAVE
24 denies each and every other allegation in paragraph 18.

25     19.    OPENWAVE admits that, after OPENWAVE disputed and rejected MYRIAD's
26 assert claims for indemnification, MYRIAD provided additional information to OPENWAVE
27 regarding some of those purported claims. OPENWAVE denies each and every other allegation
28 in paragraph 19.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21875474.2

6

PLAINTIFF'S ANSWER TO COUNTERCLAIM
CASE NO. 10-CV-02805 (LB)

20. OPENWAVE denies the allegations in paragraph 20.

21. OPENWAVE admits that it commenced this litigation seeking, among other relief, a release of the entire amount of the escrowed funds. OPENWAVE denies each and every other allegation in paragraph 21.

22. OPENWAVE denies the allegations in paragraph 22.

23. OPENWAVE denies the allegations in paragraph 23.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment

24. OPENWAVE admits that MYRIAD purports to reallege paragraphs 1 through 23 of its Counterclaim in paragraph 24.

25. OPENWAVE admits the allegations in paragraph 25.

26. OPENWAVE denies the allegations in paragraph 26.

## SECOND CLAIM FOR RELIEF

### Attorneys' Fees and Costs

27. OPENWAVE admits that MYRIAD purports to reallege paragraphs 1 through 26 of its Counterclaim in paragraph 27.

28. OPENWAVE admits the allegations in paragraph 28.

29. OPENWAVE admits that it commenced this legal action. OPENWAVE denies each and every other allegation in paragraph 29.

30. OPENWAVE denies the allegations in paragraph 30.

## PRAYER FOR RELIEF

31. OPENWAVE denies that MYRIAD is entitled to the requested relief.

Dated: August 18, 2010　　　　　　　　　　　　　MORGAN, LEWIS & BOCKIUS LLP

/s/
───────────────────────────
Brett M. Schuman
Attorneys for Plaintiff
OPENWAVE SYSTEMS INC.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21875474.2

7

PLAINTIFF'S ANSWER TO COUNTERCLAIM
CASE NO. 10-CV-02805 (LB)