BRETT M. SCHUMAN (State Bar No. 189247)
DION M. BREGMAN (State Bar No. 208393)
AHREN C. HOFFMAN (State Bar No. 250469)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: bschuman@morganlewis.com
E-mail: dbregman@morganlewis.com
E-mail: ahoffman@morganlewis.com

Attorneys for Plaintiff and Counterdefendant
OPENWAVE SYSTEMS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OPENWAVE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> MYRIAD FRANCE S.A.S, <br><br> Defendant. | Case No. 10-CV-02805 (WHA) <br><br> **SECOND AMENDED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff OPENWAVE SYSTEMS INC. ("OPENWAVE") alleges as follows:

**PARTIES**

1.  Plaintiff OPENWAVE is a Delaware corporation with its principal place of business at 2100 Seaport Blvd. Redwood City, California, 94063. OPENWAVE is qualified and duly authorized to conduct business in the State of California.

2.  On information and belief, defendant MYRIAD FRANCE S.A.S. ("MYRIAD") is a French corporation founded in 2001 with its principal place of business in France. On information and belief, and based on representations made by MYRIAD, MYRIAD is the legal successor to a company called PURPLE LABS S.A. ("PURPLE LABS").

## JURISDICTION

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a). OPENWAVE's right to relief depends on resolution of a substantial question of federal patent law.

4. This Court has personal jurisdiction over defendant MYRIAD because MYRIAD's purported predecessor PURPLE LABS expressly consented and submitted to the jurisdiction of this court for purposes of resolution of this dispute. This Court also has personal jurisdiction over defendant MYRIAD because this dispute arises out of transactions negotiated in this district by MYRIAD's purported predecessor PURPLE LABS.

## VENUE

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) & (d) and 1400(b). Further, MYRIAD's purported predecessor PURPLE LABS expressly consented that venue for this dispute is proper in this forum.

## INTRADISTRICT ASSIGNMENT

6. Pursuant to Local Rule 3-5, this case shall be assigned to the San Francisco Division because a substantial part of the events giving rise to the claims asserted in this Second Amended Complaint occurred in Redwood City, San Mateo County, California.

## GENERAL ALLEGATIONS

7. OPENWAVE is an innovator of software products that enable communication service providers and others to deliver mobile messaging, Internet and other services. In early 2008, OPENWAVE agreed to sell a portion of its business to PURPLE LABS. In an Asset Purchase Agreement dated June 27, 2008 (hereafter "APA"), OPENWAVE agreed to sell and PURPLE LABS agreed to buy OPENWAVE's mobile client software business, *i.e.*, the portion of OPENWAVE's business that developed, distributed, marketed and sold various handset software clients such as microbrowsers, SMS clients, EMS and MMS clients and other software designed for mobile handsets (hereafter, the "Business"). Among other assets, OPENWAVE assigned twenty United States patents, two then-pending United States patent applications, and four European Patents to PURPLE LABS as part of the transaction. These patents claimed inventions

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22020411.1

2

SECOND AMENDED COMPLAINT

used in the mobile client software products that PURPLE LABS was acquiring from OPENWAVE.

8. In addition to the APA., OPENWAVE and PURPLE LABS entered into an Intellectual Property License Agreement dated June 27, 2008 ("IPLA") as part of the purchase by PURPLE LABS of OPENWAVE's mobile client software business. In the IPLA, OPENWAVE licensed PURPLE LABS to two OPENWAVE patents.

9. The IPLA also contained a provision entitled "Missing Assigned Patents" that reads in part as follows: "For those Missing Assigned Patents that Purple Labs identifies to Openwave and are confirmed by Openwave to comply fully with the definition of an Missing Assigned Patent, Openwave shall assign all of its right, title and interest in such Missing Assigned Patents to Purple Labs . . . ." For purposes of the IPLA, the term "***Missing Assigned Patents***" "means patents owned by Openwave immediately prior to the execution of the APA . . . that (a) contain claims that, immediately prior to the execution of the APA, cover products or services in the "Business" (as defined in the APA) but do not cover products or services in the Openwave Field of Use; and (b) were not assigned to Purple Labs as "Seller IP" pursuant to the APA." In the APA, the term "***Business***" is defined as follows: "the mobile client software business of [Openwave] that develops, distributes, markets, sells, licenses, and supports various handset software clients such as browsers, SMS, EMS and MMS and email messaging clients, java clients, UI, widgets, graphics engines and other software designed for mobile handsets." The "Missing Assigned Patents" provision was personal to PURPLE LABS.

10. On information and belief, on December 31, 2008, PURPLE LABS acquired the 3G portion of the mobile platform business of Sagem Wireless. On information and belief, in or about April 2009 ESMERTEC AG, a Swiss company, acquired PURPLE LABS. ESMERTEC AG subsequently changed its name to MYRIAD GROUP AG. On information and belief, in or about July 2009, MYRIAD GROUP AG merged PURPLE LABS with a number of other French entities owned by MYRIAD GROUP AG, including ESMERTEC FRANCE S.A.S., CERTOIS2G S.A.S., and CERTOISE 3G S.A.S. On information and belief, the merged entity resulting from these transactions is defendant MYRIAD FRANCE S.A.S.

1    11.    On June 25, 2010, OPENWAVE commenced this action against MYRIAD seeking judicial resolution of the parties' dispute regarding disposition of $4.2 million being held in an escrow account relating to the June 2008 transaction whereby PURPLE LABS acquired OPENWAVE's mobile client software business.

12.    On July 27, 2010, over two years *after* the OPENWAVE-PURPLE LABS transaction closed and *after* OPENWAVE commenced the action against MYRIAD for resolution of the parties' escrow dispute, MYRIAD sent OPENWAVE a letter demanding that OPENWAVE assign ten patents to MYRIAD pursuant to the missing assigned patents clause in the IPLA. A true and correct copy of this letter is attached hereto as Exhibit 1.

13.    Following receipt of MYRIAD's July 27, 2010 letter, the parties exchanged further correspondence regarding the issues raised by the letter but the parties have been unable to resolve the issues raised by the letter.

14.    On or about October 22, 2010, the parties resolved their dispute regarding disposition of the escrow funds.

**FIRST CLAIM FOR RELIEF**

(Declaratory Judgment Re: Purported Missing Assigned Patents)

15.    OPENWAVE realleges and incorporates by reference the allegations stated in paragraphs 1 through 14 of this Second Amended Complaint.

16.    MYRIAD contends that OPENWAVE is required by certain provisions of the IPLA and APA to assign ten patents to MYRIAD. OPENWAVE rejects MYRIAD's claim to these patents. An actual and justifiable controversy exists between OPENWAVE and MYRIAD regarding MYRIAD's claim that it is entitled to an assignment of the ten OPENWAVE patents identified in MYRIAD's July 27, 2010 letter, Exhibit 1 hereto.

17.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, OPENWAVE requests a declaration that MYRIAD is not entitled to an assignment of the patents identified in MYRIAD's July 27, 2010 letter.

**SECOND CLAIM FOR RELIEF**

(Violations of California Business and Professions Code Section 17200 *et seq.*)

18. OPENWAVE realleges and incorporates by reference the allegations stated in paragraphs 1 through 14 of this Second Amended Complaint.

19. OPENWAVE's business model includes generating revenue from the licensing of its patents. In this regard, OPENWAVE has pursued the licensing of its patent rights from other entities that are reasonably believed to be using its patented inventions. OPENWAVE has also sought to enforce its patent rights through litigation. One or more of the patents that MYRIAD now demands from OPENWAVE have been the subject of OPENWAVE's licensing activities.

20. On information and belief, MYRIAD has known or at least should have known that OPENWAVE's business model involves such licensing activities, including those related to one or more of the ten patents it now demands from OPENWAVE. By demanding these patents from OPENWAVE, MYRIAD has interfered with OPENWAVE's ability to license and generate revenue from these patents.

21. On information and belief, MYRIAD's business model also includes generating revenue from the licensing and/or sale of its patents. As such, OPENWAVE and MYRIAD are competitors.

22. By interfering with OPENWAVE's business as described in the preceding paragraphs, MYRIAD has committed business acts and practices that are unfair in violation of the California Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200 *et seq.*

23. MYRIAD's business acts and practices are unfair in violation of the UCL because MYRIAD has no right to the ten patents it demands from OPENWAVE, or any other patents owned by OPENWAVE, and its baseless demand for these patents impairs fair and honest competition and otherwise significantly harms competition in the space of intellectual property licensing, in which MYRIAD and OPENWAVE are both competitors.

24. MYRIAD will continue to interfere with OPENWAVE's ability to license and generate revenue from its patents unless enjoined by the Court. By reason of the alleged acts and conduct of MYRIAD, OPENWAVE has suffered and will continue to suffer harm and damage. OPENWAVE is entitled to injunctive relief restraining MYRIAD from claiming it has any rights

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22020411.1

5

SECOND AMENDED COMPLAINT

to the patents identified in its July 27, 2010 letter, or otherwise interfering with OPENWAVE's licensing activities.

### THIRD CLAIM FOR RELIEF

(Intentional Interference With Prospective Economic Advantage)

25. OPENWAVE realleges and incorporates by reference the allegations stated in paragraphs 1 through 14 and 19 through 24 of this Second Amended Complaint.

26. On information and belief, MYRIAD knows that OPENWAVE's business model includes pursuing the licensing of its patents, including one or more of the ten patents now demanded by MYRIAD, from other entities that are reasonably believed to be using OPENWAVE's patented inventions. By demanding these patents from OPENWAVE, MYRIAD has interfered with OPENWAVE's ability to license these patents to other entities and generate revenue.

27. On information and belief, MYRIAD's interference with OPENWAVE's prospective economic advantage related to its licensing activities is knowing and intentional.

28. As a result of MYRIAD's intentional interference with OPENWAVE's prospective economic advantage, OPENWAVE has been damaged in an amount according to proof.

29. MYRIAD's interference was and is undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of OPENWAVE, and, therefore, OPENWAVE is entitled to an award of exemplary and punitive damages against MYRIAD in an amount according to proof.

### PRAYER FOR RELIEF

WHEREFORE, OPENWAVE prays that this Court enter judgment as follows:

(A) Declaring that MYRIAD is not entitled to an assignment of the patents identified in MYRIAD's July 27, 2010 letter, Exhibit 1 hereto;

(B) Declaring that MYRIAD be held to have engaged in unfair competition within the meaning of California Business and Professions Code §§ 17200 et seq.;

(C) Enjoining and restraining MYRIAD from claiming it has any rights to the patents

1  identified in its July 27, 2010 letter or otherwise interfering with OPENWAVE's licensing activities;

(D) Awarding OPENWAVE all actual, compensatory, and consequential damages suffered by OPENWAVE by reason of MYRIAD's conduct, and exemplary and punitive damages as authorized under the law;

(E) Awarding OPENWAVE its reasonable attorney's fees and costs; and

(F) Granting OPENWAVE such other and further relief as the Court deems just and appropriate, or that OPENWAVE may be entitled to as a matter of law or equity.

Dated: November 1, 2010            MORGAN, LEWIS & BOCKIUS LLP


By /s/
   Brett M. Schuman
   Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, OPENWAVE hereby requests a trial by jury.

Dated: November 1, 2010     MORGAN, LEWIS & BOCKIUS LLP

By /s/
Brett M. Schuman
Attorneys for Plaintiff