IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OPENWAVE SYSTEMS INC.,

    Plaintiff,

  v.

MYRIAD FRANCE S.A.S.,

    Defendant.
                               /

AND RELATED COUNTERCLAIM
                               /

No. C 10-02805 WHA

**ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY COUNSEL**

## INTRODUCTION

In this contract dispute, defendant Myriad France S.A.S. moves to disqualify Morgan, Lewis & Bockius, LLP, counsel for plaintiff Openwave Systems, Inc. For the following reasons, the motion to disqualify counsel is **DENIED**.

## STATEMENT

In 2008, plaintiff Openwave Systems, Inc. entered into an asset-purchase agreement with defendant Myriad France S.A.S., then known as Purple Labs, S.A. Under the asset-purchase agreement, Openwave agreed to sell and Myriad agreed to buy Openwave's mobile software business. The terms of that agreement are the subject of this litigation.

In the 2008 transaction, Purple Labs allegedly was represented by attorneys in the Paris office of Jones Day, including Olivier Edwards, now a partner at Morgan, Lewis & Bockius, LLP,

the firm representing plaintiff Openwave in the instant action. Olivier Edwards joined Morgan Lewis as a partner in 2009. While at Jones Day, Attorney Edwards billed 27 hours to Purple Labs and allegedly advised Myriad CEO Simon Wilkinson on the contract at issue in this litigation. Purple Labs later changed its name to Myriad.

Morgan Lewis began representing Openwave in this dispute in February 2010. Myriad allegedly discovered the putative conflict in November of 2010 and then e-mailed counsel for Openwave, advising them of the conflict and asking what measures were being taken to prevent a breach of confidentiality. Counsel for Openwave responded, stating that Attorney Edwards had not represented Purple Labs, had not worked on the instant action, and had not discussed the action with any Morgan Lewis colleagues. Myriad replied, requesting additional information about the Morgan Lewis procedures for ethical screening and offering to send copies of the legal bills paid by Purple Labs. Morgan Lewis responded with additional information about the screening procedures, assuring counsel for Openwave that all precautions were being taken to ensure confidentiality. Morgan Lewis also said that, in an abundance of caution, it was erecting an ethical screen to wall off Attorney Edwards from any access to the action.

Myriad contends that this was "too little, too late" and now moves to disqualify Morgan Lewis on the grounds that the firm is vicariously disqualified by imputation due to Attorney Edwards' former attorney-client relationship with Purple Labs.

There is no sworn evidence that any information from Attorney Edwards has ever been used in any way by Morgan Lewis in this civil action. Attorney Edwards has had nothing to do with this lawsuit.

**ANALYSIS**

**1.    STANDARD OF REVIEW**

In federal court, we look to state rules of practice to decide motions to disqualify in civil actions. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). The right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers. *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N. D. Cal. 2003) (Hamilton, J.). Motions to disqualify are generally disfavored and disqualification should be imposed only when

2

necessary. *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814–15 (N. D. Cal. 2004) (Illston, J.).

Rule 3-310(E) of the California Rules of Professional Conduct states: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." A former client can establish that an attorney violated these duties by showing that (1) the attorney is acting adversely to the former client and (2) a "substantial relationship" exists between the subjects of the current and the former engagements. *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994).

**2.  ATTORNEY-CLIENT RELATIONSHIP**

The parties do not seriously dispute the fact that the current action is adverse to Myriad and bears a substantial relationship to the 2008 Openwave-Purple Labs transaction. One dispute lies in whether or not new Morgan Lewis attorney Olivier Edwards formed an attorney-client relationship with Purple Labs while working on the deal, all of which was before he joined Morgan Lewis. Openwave maintains that Attorney Edwards never represented Purple Labs, but rather represented Sofinnova Partners, a major shareholder in the Myriad Group, parent company to Purple Labs. This is supported by the declaration of Jean Schmitt, managing partner of Sofinnova, who was closely involved with the Purple Labs investment. Jean Schmitt "engaged [Edwards] to act as counsel for Sofinnova in connection with Sofinnova investments" (Schmitt Decl. ¶ 3). Ms. Schmitt also states that Sofinnova required Purple Labs to pay Sofinnova's attorneys' fees as a term of its investment and that "Purple Labs was represented by its own, separate attorneys" (*id.* at ¶ 4). This order, however, finds that Attorney Edwards formed an attorney-client relationship with Purple Labs by dispensing legal advice to Mr. Wilkinson via e-mail.

In finding an attorney-client relationship, this order considers four main items of support: (1) the declaration of Simon Wilkinson; (2) the invoices showing that Attorney Edwards billed Purple Labs while acting as counsel for Sofinnova; (3) the decision of the Paris Bar finding that

Attorney Edwards did, in fact, have an attorney-client relationship with Purple Labs and (4) e-mails exchanged between Mr. Wilkinson and Attorney Edwards.

### A. The Declaration of Simon Wilkinson

Simon Wilkinson has been the CEO of defendant Purple Labs at all relevant times. He states that in 2008 he worked to negotiate Purple Labs' acquisition of the assets of Openwave's mobile software business. Mr. Wilkinson alleges that he received "legal advice on behalf of Purple Labs concerning the transaction from Olivier Edwards" (Wilkinson Decl. ¶¶ 2–4). Furthermore, he states: "I understood that Purple Labs and Attorney Edwards had an attorney-client relationship." Mr. Wilkinson based his understanding on (1) the fact that Purple Labs paid bills for work done by Attorney Edwards and (2) e-mail correspondence between Attorney Edwards and Mr. Wilkinson (Wilkinson Decl. ¶ 6).

### B. The Invoices

Myriad submits the invoices as evidence of the attorney-client relationship (Wilkinson Exh. A). "Payment of attorney fees alone does not determine an attorney-client relationship; it is merely a factor." *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Tech., Inc.*, 69 Cal. App. 4th 1399, 1404–05 (1999). The time entries show the Jones Day attorneys interacting directly with Sofinnova employees and interacting with counsel for Purple Labs (Schuman Exh. B at 5). Openwave argues that "Purple Labs was contractually obligated as part of the investment to pay the attorney's fees incurred by Sofinnova in hiring counsel to represent it" (Opp. 17). Significantly, Myriad offers nothing to rebut this contention. Thus, the invoices are instructive but not dispositive.

### C. The E-mails

Mr. Wilkinson also believed that he was represented by Attorney Edwards based on e-mail correspondence the two shared. Myriad highlights (1) a series of e-mails the two exchanged while working on the 2008 transaction and (2) a solicitation e-mail Attorney Edwards sent to Mr. Wilkinson as he was leaving Jones Day for Morgan Lewis. Relying on *People ex rel Department of Corporations v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1148 (1999), Myriad states that "even in the absence of an express contract, where an attorney acquires confidential

4

information and where a party seeks and obtains legal advice from that attorney, an attorney client relationship is established" (Mot. at 6).

The e-mails show that Attorney Edwards gave Mr. Wilkinson legal advice during the 2008 transaction. The e-mails are a series of brief volleys sent back and forth over the course of three days in June 2008. The recipients include Mr. Wilkinson, Sofinnova employees and other Jones Day attorneys (Schuman Exh. A). Investor Sofinnova sought Attorney Edwards' opinion on an agreement drafted between Purple Labs and Openwave. Attorney Edwards responded with questions and suggestions. For example, in regards to a clause of the draft agreement, Attorney Edwards wrote: "As there are no assets transferred from the subs this would probably be deleted from the SPA" (*id.* at 2). In another e-mail, Attorney Edwards asks: "Did you contemplate to go for arbitration [sic] given that litigation in the U.S. is an absolute fortune?" (*id.* at 3). This language recommended that Mr. Wilkinson consider including an arbitration clause. Thus, Attorney Edwards did, in fact, provide legal advice to Purple Labs.

When Attorney Edwards left Jones Day in 2009, he sent an e-mail to Mr. Wilkinson (and Myriad employee Steve Langkamp). In the e-mail, Attorney Edwards sought to collect on bills associated with the 2008 transaction. Attorney Edwards also informed them of his imminent departure from the firm and stated: "Naturally this will not prevent me from continuing to advise you, if you so wish. Indeed Morgan Lewis has all capacities to meet your needs and I would be honored to continue to work for you. Please do not hesitate to ask any question you may have" (Wilkinson Exh. B). The language "continuing to advise you" and "continue to work for you" demonstrates that Attorney Edwards viewed Purple Labs as a previous client. The 2008 e-mails discussing the arbitration clause and the 2009 solicitation e-mail show an attorney-client relationship.

**D.     The Findings of the Paris Bar**

In January 2011, Myriad sought a ruling from the Paris Bar in hopes of confirming that Attorney Edwards "indeed represented Purple Labs and that Morgan Lewis should be conflicted out of [this]" (Mot. at 3–4). The Paris Bar found that Attorney Edwards did have an

5

attorney-client relationship with Purple Labs. Although the Paris Bar ruling is not binding, this order finds the decision persuasive.

### E. Mr. Wilkinson's Subjective Belief

Relying on *Responsible Citizens v. Superior Court*, Myriad states that one of the most important factors to consider in finding an attorney-client relationship is "the expectation of the client based on how the situation appears to a reasonable person in the client's position." 16 Cal. App. 4th 1717, 1733 (1993). The same decision stated: "[W]e believe that in determining whether an attorney-client relationship exists in cases like this, primary attention should be given to whether the *totality of the circumstances*, including the parties' conduct, implies an agreement . . . not to accept other representations adverse to the [parties'] interests." The weight of the parties' subjective expectation, therefore, must be judged within the context of the factual circumstances. In the instant action, it would have been reasonable for Mr. Wilkinson to believe that Attorney Edwards was part of a larger team of counsel advising the Purple Labs side of the transaction. Mr. Wilkinson received legal advice from Attorney Edwards, as well as a letter acknowledging their ongoing attorney-client relationship.

True, Purple Labs was represented by its own counsel in the 2008 transaction (Reply Br. 5). But a client can have more than one law firm as counsel. Based on the foregoing, this order finds that Attorney Edwards did have an attorney-client relationship with Mr. Wilkinson and Purple Labs.

### 3. VICARIOUS DISQUALIFICATION

This order now turns to the issue of disqualification. At the March 24 hearing, the Court requested supplemental briefings on the question of whether the finding of an attorney-client relationship would result in automatic disqualification of Morgan Lewis (Dkt. No. 127 at 34). Based on the briefs provided on the issue, the parties agree that the governing law is *Kirk v. First Am. Ins. Co.*, 183 Cal. App. 4th 776, 108 (2010).

*Kirk* holds that, though vicarious disqualification is the general rule, a firm is not *automatically* disqualified by imputation upon the finding of a tainted attorney in its midst. The firm may rebut the presumption that confidential client information was shared by showing that

6

the tainted attorney has not had and will not have any involvement with the litigation, or any communication with other attorneys or employees concerning the litigation. *Id.* at 801. "The inquiry before a trial court considering the efficacy of any particular ethical wall is not to determine whether all of a prescribed list of elements (beyond timeliness and the imposition of prophylactic measures) have been established; it is, instead, a case-by-case inquiry focusing on whether the court is satisfied that the tainted attorney has not had and will not have any improper communication with others at the firm concerning the litigation." *Id.* at 811. In other words, the assigned judge must exercise discretion based on the facts and circumstances.

The Court is satisfied that Attorney Edwards has not had and will not have any improper communication with others at the firm concerning the litigation. Myriad has provided no sworn evidence that Attorney Edwards ever transmitted confidential information to the attorneys representing Openwave. The Openwave attorneys have submitted sworn declarations that they have never met or spoken with Attorney Edwards and have never learned any confidential information from him related to this litigation. Attorney Edwards swears that he has never shared any information (Edwards Decl. ¶ 17).

Furthermore, Morgan Lewis has taken appropriate precautions in erecting an ethical wall to ensure that no information has been shared. Morgan Lewis asserts that the screen was in place by November 20, 2011 (Opp. 20). In order to maintain confidentiality, Morgan Lewis has done the following: (1) distributed a screening memorandum expressly prohibiting discussion of confidential matters to all involved personnel; (2) secured all papers and files; (3) labeled all paper documents with a statement regarding the ethical wall; and (4) limited access to electronic files to only the "core group of professionals and support staff" assigned to the matter (D'Agostino Decl. ¶¶ 5–6). The firm has taken the additional step of ensuring that Attorney Edwards does not directly receive compensation generated by this litigation. This order finds that the ethical wall erected by Morgan Lewis is sufficient to overcome the presumption that confidential information has been or will be shared.

Was the ethical wall "too little, too late?" Myriad contends that the ethical wall should have been put in place when Morgan Lewis first began to represent Openwave in February 2010.

True, *Kirk* states that "a firm must impose screening measures when the conflict first arises," preferably at the outset of litigation. *Id.* at 810. Here, however, Morgan Lewis states that the wall was erected as soon as they were made aware of the conflict. Because Attorney Edwards never formally represented Purple Labs, the firm's conflict check — performed when Attorney Edwards joined the firm — did not turn up this conflict. Given that the ethical wall was erected within one day after Morgan Lewis learned of the conflict, this order finds that it will do.

Myriad suggests that Morgan Lewis should be held to the argument they made in *Openwave Systems, Inc. v. 724 Solutions*, No. C 09-03511 RS, 2010 WL 1687825, at *1 (N. D. Cal. Apr. 22, 2010) (Seeborg, J.). There, Morgan Lewis argued on a motion to disqualify counsel that the ethical wall implemented by opposing counsel Fish & Richardson was insufficient because it was not erected until *after* Fish received notice of the conflict from Morgan Lewis. If this order were to hold Morgan Lewis to its previous arguments, then it also would have to hold Myriad's counsel to the now-contradictory arguments they employed to the undersigned in *Conceptus, Inc. v. Hologic, Inc.*, No. C 09-02280 WHA, Dkt. No. 46 (N.D. Cal. Aug. 3, 2009). Too much money is being wasted these days on tactical motions to disqualify.

**4.    DELAY AND PREJUDICE**

"It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). Myriad first became aware of the potential conflict with Morgan Lewis in November 2010. It did not bring its motion to disqualify, however, until March 2011. Myriad offers no satisfactory explanation for this lengthy delay. Myriad indicates that it first sought a ruling from the Paris Bar. This is lame. Myriad did not voice any concern to the Paris Bar until January 2011, approximately two months after discovering the potential conflict. Furthermore, there was nothing to stop Myriad from bringing a motion before this Court as well as seeking a ruling from the Paris Bar. Even after obtaining a ruling from the Paris Bar, Myriad waited an additional two weeks before filing its motion in this Court. Myriad argues that it "raised the conflict with Morgan Lewis on November 19, 2010, within days of Myriad's

personnel and attorneys learning of the conflict" (Reply Br. 7). The issue was not even surfaced for the Court until a discovery hearing on February 28 (Dkt. No. 63 at 42).

Relying on *Skyy Spirits, LLC v. Rubyy, LLC*, Myriad argues that the lag between discovery of the potential conflict and the filing of this motion is too short to support a finding of delay. No. C 09-00646 WHA, 2009 WL 3762418 (N. D. Cal. Nov. 9, 2009). In the instant action, however, delay should not be measured by the number of months, but rather in terms of how those months were employed in preparing the case. Much has happened since Morgan Lewis began representing Openwave. The parties have exchanged interrogatories, produced documents, submitted privilege logs, and conducted key depositions (Dkt. No. 120 at 1–2). One discovery cut-off is a little over a month away.

In October 2010, Morgan Lewis represented Openwave in coming to a settlement with Myriad in regards to the allocation of escrowed funds related to the transaction in question in this litigation. At no time during the settlement negotiations did Myriad express a concern about a possible conflict with Morgan Lewis' representation of Openwave. Morgan Lewis put time and effort into negotiating this settlement and developed a strong understanding of the facts at hand. Disqualifying Morgan Lewis at this point would prejudice Openwave.

Because an attempt to disqualify the opposing attorney is often tactically motivated and disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored. *Visa*, 241 F. Supp. 2d at 1104. Myriad's motion — given the minute likelihood of an actual breach of confidentiality, its strategic timing, and the delay in its filing — appears to be motivated by a desire to derail an upcoming summary judgment motion. In fact, despite having knowledge of the conflict for months, Myriad filed the instant motion just two days after Openwave sought leave to file for summary judgment.

Additionally, motions for disqualification "should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985). The party seeking disqualification bears a "heavy burden." *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 851 (2006). Myriad has failed to meet its burden.

9

1    In deciding a motion to disqualify counsel, *Kirk* urges the trial court to consider overriding
2  policy factors including the following: (1) a client's right to chosen counsel; (2) an attorney's
3  interest in representing a client; (3) the financial burden on a client to replace disqualified
4  counsel; (4) the possibility that tactical abuse underlies the disqualification motion; (5) the need
5  to maintain ethical standards of professional responsibility; and (6) the preservation of public trust
6  in the scrupulous administration of justice and the integrity of the bar. *Id.* at 807–08. The above
7  findings are consistent with these policies.

                              *        *        *

9    This order does not bless Attorney Edwards or Morgan Lewis, and it would have been
10 better for Morgan Lewis to have learned of the conflict and bowed out early on. Professional
11 responsibility should trump profitability. But the problem is more complicated than that. One
12 main lesson here is that motions to disqualify should be promptly made before the parties are
13 invested substantially in their litigation line-ups. Litigants should not temporize when it comes to
14 disqualification, especially when the asserted grounds are not manifestly compelling.

## CONCLUSION

Based on the foregoing, the motion to disqualify counsel is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 31, 2011

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10