IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OPENWAVE SYSTEMS INC.,

    Plaintiff,

  v.

MYRIAD FRANCE S.A.S.,

    Defendant.

AND RELATED COUNTERCLAIMS

No. C 10-02805 WHA

**PARTIAL SUMMARY JUDGMENT ORDER AND ORDER RE BIFURCATION AND TRIAL PLAN**

## INTRODUCTION

In this dispute regarding ownership of patent assets, this order grants partial summary judgment, frames certain threshold issues, and establishes a trial plan.

## STATEMENT

The facts of the case are set forth in the May 2011 order denying summary judgment (Dkt. No. 256). Four threshold issues have been isolated for resolution in the first phase of this action: (1) the standing of Myriad France S.A.S. to assert rights under the June 2008 agreement between Openwave Systems Inc. and Purple Labs SA; (2) the meaning of the word "cover" in the definition of Missing Assigned Patents in the Intellectual Property Licensing Agreement; (3) the validity and meaning of the IPLA clause providing for assignment of Missing Assigned Patents; and (4) whether the Court (or jury) makes a *de novo* determination whether a patent is a Missing

1  Assigned Patent versus whether Openwave need only show it had a reasonable basis for its denial
2  as to each disputed patent (Dkt. No. 259). The parties disagree on how to frame some of these
3  issues for trial, and they also disagree as to whether the issues should be decided by a jury or by
4  the Court (Dkt. No. 272). Following extensive briefing on the remaining points of disagreement,
5  this order frames the threshold issues for trial and establishes a trial plan.

**ANALYSIS**

The Seventh Amendment preserves the right to trial by jury of all legal claims, whereas no right to a jury exists for equitable claims. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001). In determining whether the jury right attaches to a particular claim for relief, courts consider whether the rights and remedies at stake are legal or equitable in nature. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564–65 (1990). Here, each party asserts three claims for relief in its operative pleading.

Openwave asserts (1) a claim for declaratory judgment that Myriad is not entitled to assignment of the disputed patents, (2) a claim for violation of Section 17200 of California's Business and Professions code, based on the theory that Myriad's patent-assignment requests have interfered with Openwave's licensing activities and thereby constitute unfair competition, and (3) a claim for intentional interference with prospective economic advantage, also based on the impact of Myriad's patent-assignment requests on Openwave's licensing activities. Openwave seeks declaratory and injunctive relief, as well as damages, costs, and attorney's fees (Dkt. No. 28 at 4–7).

Myriad asserts (1) a claim for declaratory judgment that the disputed patents are Missing Assigned Patents and that Openwave must assign them to Myriad, (2) a claim for specific performance of the IPLA, including assignment of the alleged Missing Assigned Patents, and (3) a claim for attorney's fees and costs. Myriad seeks dismissal of Openwave's complaint, declaratory relief, and assignment of the disputed patents. If any of the patents are encumbered or otherwise not available for assignment, Myriad seeks damages as an alternative remedy (Dkt. No. 52 at 11–12).

The legal or equitable nature of a claim for declaratory depends on context. *Pac. Indem. Co. v. McDonald*, 107 F.2d 446, 448 (9th Cir. 1939). Although declaratory *relief* is equitable in nature, "[t]he right to a jury trial of factual issues ordinarily triable to a jury is expressly preserved by the declaratory judgment statute." *Dickinson v. Gen. Accident Fire & Life Assurance Corp.*, 147 F.2d 396, 397 (9th Cir. 1945). Here, the declaratory claims arise in the context of a dispute over contract interpretation. The dispute is not whether one party *performed* as required by the contract, but rather *what the contract requires*. Openwave essentially seeks to quiet title to its intellectual property, while Myriad seeks conveyance of that unique property as specific performance of the contract. Myriad's fall-back request for damages in lieu of an un-assignable patent has not yet been triggered and may never come into play. In this context, both parties' claims for declaratory judgment are equitable in nature. *See Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (finding action for specific performance to be equitable rather than legal in nature); *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 330 (2008) (referring to quiet title as equitable claim not decided by jury). Contrary to Openwave, the declaratory judgment claims in this action do not most closely resemble a legal breach-of-contract action. The Seventh Amendment jury right does not attach to either party's claim for declaratory judgment.

Myriad's affirmative claim for specific performance is likewise equitable and does not trigger any jury right. Myriad's request for attorney's fees and costs, though set forth as a third claim for relief, is no more than a remedy component. As such it does not change the equitable nature of Myriad's two substantive claims for relief. Openwave's Section 17200 claim is equitable as well and does not trigger any jury-trial rights. *Steinberg Moorad & Dunn Inc. v. Dunn*, 136 F. App'x 6, 9 (9th Cir. 2005) ("Statutory unfair competition is an equitable claim under California law, one that does not provide for damages or a jury trial.").

Openwave's claim for intentional interference, however, is legal in nature. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006 (referencing jury verdict on claims for intentional interference with prospective economic advantage). Even Myriad concedes this point (Myriad Br. 3). Openwave's intentional interference claim is the only claim in this entire action to which the jury right attaches.

3

1    Even with respect to the lone jury-triable claim, not all *issues* are properly decided by a
2 jury. "In actions at law predominantly factual issues are in most cases allocated to the jury." *City
3 of Monterey v. Del Mote Dunes at Monterey, Ltd.*, 526 U.S. 687, 720 (1999). Questions of law,
4 on the other hand, are "to be decided by the court, not the jury." *United States v. Dipp*,
5 581 F.2d 1323, 1328 (9th Cir. 1978). Thus, only factual issues that relate to Openwave's
6 intentional interference claim need be resolved by a jury. All other issues are properly decided by
7 the Court. Each of the threshold issues to be decided in the first phase of this action will be
8 considered in light of this rule.

   **1.    STANDING OF MYRIAD.**

10    The first threshold issue is whether Myriad has standing to assert rights under the
11 June 2008 agreement between Openwave and Purple Labs. The parties agree that this issue
12 should be framed as "whether the 2009 transaction between Purple Labs SA and Esmertec
13 constituted an attempted transfer of Purple Labs's [*sic*] rights under the IPLA pursuant to
14 California law, and, if so, whether the transfer falls under any of the IPLA's four enumerated
15 exceptions that Myriad contends do not require Openwave's prior written consent"
16 (Dkt. No. 272 at 2).

17    The standing issue is related to the parties' battle for patent ownership, but it is not related
18 to Openwave's intentional interference claim. The tort of intentional interference with
19 prospective economic advantage has five elements: (1) an economic relationship between the
20 plaintiff and some third party, with the probability of future economic benefit to the plaintiff;
21 (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant
22 designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic
23 harm to the plaintiff proximately caused by the acts of the defendant. *Youst v. Longo*,
24 43 Cal. 3d 64, 71 n.6 (1987). Myriad's standing to assert rights under the IPLA has nothing to do
25 with any of these elements. Because the standing issue is unrelated to the sole legal claim in this
26 action, it will be tried to the bench.

4

### 2. MEANING OF "COVER" IN DEFINITION OF MISSING ASSIGNED PATENTS.

The second threshold issue is the meaning of the word "cover" in the definition of Missing Assigned Patents in the IPLA. The parties do not agree on how to frame this issue for trial. Myriad contends that the question is what the term "cover" meant to a reasonable business person in 2008, and that the answer is "generally describing client-side products and services, or serving to protect client-side products and services from competition" (Myriad Br. 9). Openwave, on the other hand, contends that the proper question is what the parties to the IPLA actually intended the term "cover" to mean. According to Openwave, the answer is either that "one of the client software products Purple Labs acquired from Openwave infringed the patent as of June 26, 2008" or that "the invention described in the patent was implemented in one of the client software products Purple Labs acquired from Openwave as of June 26, 2008" (Openwave Br. 14).

The meaning of the term "cover" is a matter of contract interpretation. Under California law, the goal of contract interpretation is "to give effect to the mutual intent of the parties." *In re Imperial Credit Indus., Inc.*, 527 F.3d 959, 966 (9th Cir. 2008). This standard, however, is an *objective* one and does not depend on the parties' *subjective* intents. *Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 980 (2006) ("California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.") (internal quotations and citations omitted). Thus, the proper question is how reasonable parties in the same negotiations as Oracle and Purple Labs would have understood the term "cover" when they signed the IPLA.[1]

The IPLA (which defines and provides for assignment of Missing Assigned Patents) and the Asset Purchase Agreement (which addresses related aspects of the deal) are fully-integrated contracts. They both contain merger clauses indicating that they constitute the entire agreement and final understanding of the parties with respect to the subject matter they address (Dkt. No. 138-1 at § 6.16; Dkt. No. 142-1 at § 7.11). There is no reason to doubt that these

---

[1] Both of the relevant contracts contain choice-of-law provisions dictating that California law applies to disputes such as this one (Dkt. No. 138-1 at § 6.10; Dkt. No. 142-1 at § 7.2). Both sides rely on California law.

contracts were intended to be the final, complete expression of the parties' agreement. As such, extrinsic evidence may be introduced to explain an ambiguous contract term like "cover" only if offered to prove an interpretation to which the language is reasonably susceptible. *United States Cellular Inv. Co. of Los Angeles v. GTE Mobilnet, Inc.*, 281 F.3d 929, 938 (9th Cir. 2002). The term "cover" is not reasonably susceptible to either of Openwave's interpretations.

*First*, "cover" cannot mean infringement. The sophisticated parties to the IPLA were familiar with the term infringement and the concept of an infringement analysis. They invoked infringement elsewhere in their contracts but chose not to do so when defining Missing Assigned Patents (*e.g.*, Dkt. No. 138-1 at § 2.7(f); Dkt. No. 142-1 at § 5). Moreover, the bone-crushing burden of claim construction and a double infringement analysis for each patent claim is too impractical, grossly so, to have been a mutual business intent. The term "cover" as used in the definition of Missing Assigned Patents is not reasonably susceptible to any meaning that requires a conventional infringement analysis. No extrinsic evidence will be admitted to prove such an interpretation.

*Second*, "cover" cannot require actual implementation in products that existed at the time of the deal. The definition of Missing Assigned Patents requires claims that "cover products or services in the 'Business,'" and the Business includes "develop[ment]" (Dkt. No. 142-1 at § 1.3; Dkt. No. 138-1 at A-1). This usage of the term "cover" cannot reasonably be limited to implementation in actual products that existed when the deal was closed. No extrinsic evidence will be admitted to prove such an interpretation.

Because Openwave would not be allowed to introduce evidence at trial to prove its infringement or implementation glosses, Myriad is entitled to partial summary judgment dispatching Openwave's unreasonable glosses to oblivion. *Bird v. Glacier Electric Coop., Inc.*, 255 F.3d 1136, 1152 (9th Cir. 2001) ("[A] court has power *sua sponte* to grant summary judgment to a non-movant when there has been a summary judgment motion by one party and no cross-motion."); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982) (stating that if it is apparent "that the case cannot be proved if a trial should be held, the court may sua sponte [*sic*] grant summary judgment to the non-moving party"). This does not necessarily mean, however,

1 that Myriad's construction is correct. The issue for trial is what reasonable parties in the same
2 negotiations as Openwave and Purple Labs would have understood the term "cover" to mean in
3 the definition of Missing Assigned Patents. Openwave's infringement and implementation
4 interpretations, however, will not be on the table.

5       This contract-interpretation issue is not relevant to Openwave's intentional interference
6 claim. Accordingly, it will be tried to the bench rather than to a jury.

      **3.**     **VALIDITY AND MEANING OF THE MISSING ASSIGNED PATENTS CLAUSE.**

8       The third threshold issue is the validity and meaning of the contract clause providing for
9 assignment of Missing Assigned Patents. The parties propose that this issue should be framed as
10 three sub-issues: (1) "[w]hether or not the requests made by Myriad in July 2010 and
11 December 2010 for purported Missing Assigned Patents were unreasonably late under the terms
12 of the IPLA and California law"; (2) "[w]hether a 'Missing Assigned Patent' is a patent that
13 covers only the client-side products in the 'Busines' acquired by Purple Labs from Openwave
14 (Openwave's position) or whether patents with at least two claims that cover the client-side
15 business but do not cover the server-side business qualify as Missing Assigned Patents (Myriad's
16 position)"; and (3) "[w]hether qualifying patents must have actually been implemented in
17 Openwave products or services that existed in June 2008" (Dkt. No. 272 at 2).

18       This order already found that the term "cover" in the definition of Missing Assigned
19 Patents cannot reasonably be interpreted to require actual implementation in existing products or
20 services. Thus, only the first two of these three issues remain to be decided. Neither of them
21 relates to Openwave's intentional interference claim, so they will be tried to the bench rather than
22 to a jury.

      **4.**     **ANALYTICAL FRAMEWORK FOR RESOLVING PATENT OWNERSHIP.**

24       Regarding the fourth threshold issue, the parties disagree as to whether the Court (or jury)
25 should make a *de novo* determination whether a patent is a Missing Assigned Patent versus
26 whether Openwave need only show it had a reasonable basis for its denial as to each disputed
27 patent (Dkt. No. 272 at 3). They agree, however, that the Court rather than a jury should decide
28 which framework applies. Indeed, the issue has been fully briefed and is now ripe for resolution.

7

The Missing Assigned Patents clause outlines the following series of events: (1) the buyer "become[s] aware of the existence of a Missing Assigned Patent" — meaning a patent that satisfies the definition of Missing Assigned Patents; (2) the buyer identifies the patent as such to the seller; (3) the seller confirms the patent as such; and (4) the seller assigns the patent to the buyer (Dkt. No. 142-1 at § 2.4). In the (third) confirmation step, Openwave is to make a determination whether or not the identified patent satisfies the definition of Missing Assigned Patents. This determination does not call for discretion. In contrast to a decision whether work has been performed satisfactorily, or whether certain material should be used, or whether a ship should set sail under certain weather conditions, the confirmation step does not call for Openwave to exercise independent judgment. It simply calls for a determination whether or not a stated definition is satisfied by a particular patent. If the parties agree that the patent is a Missing Assigned Patent, then the patent is assigned. If they disagree, there is no prescribed procedure for resolving the ownership dispute. It seems clear that the reasonable intent was for such disputes to be decided *de novo* by a court. This is in contrast to ownership claims regarding licensed intellectual property, which are to be resolved through a meet-and-confer process (*id.* at § 2.5).

This construction does not render the confirmation clause meaningless, as Openwave protests. It does not mean that Openwave must assign any patent Myriad requests. On the contrary, it discourages both overreaching requests and overreaching denials, because such positions would not be defensible in court. If disagreements are solved by *de novo* evaluation, then the parties should not adopt contrary positions unless the expense of defending or asserting them in litigation is justified by a likelihood of success.

Openwave's reliance on the covenant of good faith and fair dealing is also misplaced. Where a contract invests one party with a discretionary power affecting the rights of another, the implied covenant requires that the discretionary power be exercised in good faith. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372 (1992). Based on the implied covenant, Openwave argues that its refusal to confirm the identified patents should be disturbed only if Myriad can prove that it was arbitrary, capricious, or lacking in evidentiary support (Openwave Br. 15–18). Openwave's refusal, however, was not pursuant to a grant of

8

discretion in the first place. Accordingly, the implied covenant does not govern. That Openwave has a reasonable argument for a given refusal will not overcome a wrongful refusal to assign.

During the second phase of this action, the ultimate ownership question will be whether each of the disputed patents satisfies the definition of Missing Assigned Patents as set forth in the IPLA. A *de novo* determination will be made as to each patent. Because this question does not relate to Openwave's intentional interference claim, the *de novo* determination will be made by the Court, not by a jury.

**CONCLUSION**

Partial summary judgment regarding the meaning of the term "cover" in the definition of Missing Assigned Patents is **GRANTED** in favor of Myriad and against Openwave. Openwave's unreasonable glosses requiring infringement or implementation are rejected, but Myriad's interpretation has not yet been accepted.

This action will proceed in three phases. *First*, the following threshold issues will be resolved by way of a bench trial beginning on **AUGUST 29, 2011**.

> 1. Whether Myriad has standing to assert rights under the June 2008 agreement between Openwave and Purple Labs; specifically, whether the 2009 transaction between Purple Labs and Esmertec constituted an attempted transfer of Purple Labs' rights under the IPLA pursuant to California law, and, if so, whether the transfer falls under any of the IPLA's four enumerated exceptions that Myriad contends do not require Openwave's prior written consent.
>
> 2. Whether or not the requests made by Myriad in July 2010 and December 2010 for purported Missing Assigned Patents were unreasonably late under the terms of the IPLA or under California law.
>
> 3. What reasonable parties in the same negotiations as Openwave and Purple Labs would have understood the term

9

"cover" to mean in the definition of Missing Assigned Patents in the IPLA. No interpretations requiring infringement or actual implementation will be considered.

    4. Whether the definition of Missing Assigned Patents requires the claims of a patent to cover *only* the client-side products in the "Business" acquired by Purple Labs from Openwave (Openwave's position), versus whether it includes any patent with at least two claims covering the client-side business without said claims covering the server-side business (Myriad's position).

Each side will have a total of six hours of evidence time, which can be allocated among the four threshold issues in any way. This will not count openings and closings but will include all evidence time, including both direct and cross.

*Second*, all claims except Openwave's intentional interference claim will be resolved in a second bench trial, the date of which will be established later. In particular, ownership of the disputed patents will be resolved via a *de novo* determination by the Court as to whether each patent satisfies the definition of Missing Assigned Patents.

*Third*, Openwave's intentional interference claim will be resolved in a jury trial if summary judgment is avoided thereon.

**IT IS SO ORDERED.**

Dated: June 29, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE